UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

David P. Benschoter,

                Plaintiff,

    v.

Board of Trustees, Iron
Workers Pension Plan, Local
No. 55, et. al.,

                Defendants.

Case No. 3:13-cv-02698

MEMORANDUM
OPINION & ORDER

## I. INTRODUCTION

Before me are the competing motions of Defendant Board of Trustees, Iron Workers Pension Plan, Local No. 55, and Plaintiff David P. Benschoter for judgment on the administrative record. (Doc. No. 29 and 34). The parties have completed briefing. Defendant does not oppose Benschoter's motion for leave to file a motion for judgment on the administrative record; accordingly, leave is granted. For the reasons stated below, Defendant's motion for judgment is granted and Benschoter's motion for judgment is denied.

## II. BACKGROUND

Benschoter formerly was a member of Local 55 and was enrolled in its defined benefit plan (the "Plan"). After leaving the union, Benschoter applied for a lump sum severance benefit through a procedure set forth in the Plan. This procedure required Benschoter to submit application and

release forms, a copy of his tax return, and "a written statement of [his] current employment status to include details of [his] employer [and] job duties . . . ." (Doc. No. 28-1 at 8).

In support of his application for benefits, Benschoter submitted a copy of the January 31, 2007 announcement of the Toledo Civil Service Commission, soliciting applications for a full-time bridge mechanic position. The announcement indicated one of the minimum requirements for the positing was "[p]ossession of a journeyman's card in the ironworking, boilermaker, carpentry, cement mason or a closely related building construction trade." (Doc. No. 28-1 at 6). The announcement also described the general duties associated with the bridge mechanic position. Bridge mechanics could be called upon to perform "cutting, welding and burning functions in the maintenance and repair of steel bridge structures"; to build "forms for concrete work"; to grade, mix, pour, and finish concrete; and to construct, repair, replace and inspect bridge roadways. (Doc. No. 28-1 at 7).

The Board of Trustees denied Benschoter's request upon his initial application and following his timely appeal of that decision, concluding Benschoter did not qualify for the severance benefit because, in his new job as a bridge mechanic for the City of Toledo, Ohio, Benschoter continued to perform "bargaining unit work." (Doc. No. 28-1 at 9).

When appealing the denial of his benefits application, Benschoter asserted he did not actually perform "bargaining unit work" because he did not do fabrication work and instead maintained and repaired equipment. (Doc. No. 28-1 at 12). Benschoter also asserted a number of former union members who subsequently became bridge mechanics were permitted to receive benefits under the Plan. (Id.). After the denial of his appeal, Benschoter filed suit. Defendant filed a motion to dismiss Benschoter's First Amended Complaint, which I granted as to counts two and three only. The parties' pending motions therefore address only Benschoter's remaining claim for recovery of plan benefits pursuant to 29 U.S.C. § 1132(a)(1)(B).

### III.    STANDARD

A court's review of a plan administrator's determination is limited to the administrative record. *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 164 (6th Cir. 2007). The court must conduct a de novo review of a § 1132(a)(1)(B) challenge to the denial of benefits "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan grants the administrator this discretionary authority, the court reviews the administrative record under the arbitrary and capricious standard. *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006). An administrator's decision is not arbitrary and capricious "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Id.* (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). Substantial evidence is evidence that "is adequate, in a reasonable mind, to uphold the decision." *Elec. Workers Local 58 Pension Trust Fund v. Gary's Elec. Serv. Co.*, 227 F.3d 646, 652 (6th Cir. 2000) (quoting *Turnbull Cone Baking Co. of Tenn. v. NLRB*, 778 F.2d 292, 295 (6th Cir. 1985)).

### IV.    ANALYSIS

The Plan grants the Board of Trustees "full discretionary authority to determine eligibility for benefits, interpret plan documents, and determine the amount of benefits due." (Doc. No. 1-1 at 54). Therefore, I must review the denial of benefits under the arbitrary-and-capricious standard. *Cooper*, 486 F.3d at 164.

A Plan participant is entitled to a severance benefit under the Plan if the participant (1) had a qualifying Termination of Employment; (2) had at least five years of participation in the Plan at the time of the Termination of Employment; (3) meets the eligibility requirements set forth in Article I, § 1.21 of the Plan; and (4) submits the necessary application and personal data. (Doc. No. 1-1 at 30). The Plan defines "Termination of Employment" as "the cessation of work (both within and

outside the Jurisdiction of the Union) for a complete Plan Year . . . ." (Doc. No. 1-1 at 13). The "Jurisdiction of the Union" means "the type of work described in a collective bargaining agreement to which the Union is a party as being the type of work which comes under said agreement while said work is performed within the geographic area assigned to the Union . . . ." (Doc. No. 1-1 at 11). For the purpose of determining eligibility for a severance benefit, a Termination of Employment occurs one year after the date on which a plan participant last had one hour of service. (Doc. No. 1-1 at 13).

Defendant filed a copy of the collective bargaining agreement (the "CBA") reached by the Labor Relations Division of the Associated General Contractors of Northwest Ohio, Inc. and Local 55, effective July 1, 2012. (Doc. No. 29-1). Benschoter contends Defendant's reliance on the CBA in denying his claim for benefits was improper because it is not part of the Plan document and the Plan does not expressly incorporate a section of this specific agreement. (Doc. No. 33 at 8). Benschoter does not offer any authority to support his contention that this degree of specificity is required. Unlike the plan documents in *Jones v. Metro. Life Ins. Co.*, the Plan includes a definition of the term "Jurisdiction of the Union." *See Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004). The contract between the Associated General Contractors and Local 55 clearly states "Jurisdiction of the Union" means the description of work contained in "a" collective bargaining agreement involving Local 55. This is not a situation where the applicable term is undefined, *id.*, or where the plan administrator has rewritten the plan by imposing a limitation on language in the plan. *See Univ. Hosps. of Cleveland v. Emerson Elec. CO.*, 202 F.3d 839, 849 (6th Cir. 2000). Benschoter does not challenge the validity of the Plan and there is no basis upon which to invalidate the clear and plain language of the Plan in favor of Benschoter's preferred level of specificity. Benschoter's assertion that the cross-reference in Article I, § 1.21 constitutes an impermissible additional eligibility requirement is incorrect.

4

The CBA defines the craft jurisdiction of Local 55 to include "the fabrication, production, erection and construction of: all iron, steel, ornamental lead, bronze, brass, copper, aluminum, all ferrous and nonferrous metals[,] precast, prestressed concrete structures, . . . bridges," as well as "material altered in field such as: framing, cutting, bending, drilling, burning and welding by acetylene gas and electric machines[,] . . . setting concrete forms, . . . [and] wrecking and dismantling of all of [the] above . . . ." (Doc. No. 29-1 at 4-5). As I noted above, the job description Benschoter submitted states bridge mechanics are expected to perform "cutting, welding and burning functions in the maintenance and repair of steel bridge structures," to build "forms for concrete work," to set grades, mix, pour, and finish concrete, and to construct, repair, and replace "bridge roadways." (Doc. No. 28-1 at 7). Benschoter's assertion he maintains and repairs equipment but does not do fabrication work as a bridge mechanic does not remove his duties from the scope of the CBA's craft jurisdiction provision. The evidence Benschoter provided in support of his application for benefits constitutes substantial evidence to sustain Defendant's denial of benefits. *Glenn*, 461 F.3d at 666. I conclude Defendant's decision was not arbitrary or capricious.

Benschoter also argues Defendant improperly denied his application and appeal because it did not do "a full analysis of the work actually performed (including the substantiality and frequency of specific duties performed), but referencing only the submission of the job description and [Benschoter's] general remarks at [the] hearing." (Doc. No. 33 at 7). This argument is unpersuasive. The Plan places the burden on a claimant to submit evidence in support of his claim and appeal. (Doc. No. 1-1 at 30, 52). It does not require Defendant to determine whether the facially-disqualifying information the claimant submits in fact is inaccurate.

Finally, Benschoter argues Defendant's failure (1) to include information in the administrative record about the other Plan participants he mentioned in his appeal notice or (2) to review the files of those individuals before distinguishing their applications from Benschoter's makes

5

Defendant's denial of his application arbitrary and capricious. (Doc. No. 33 at 8-9). Defendant refused Benschoter's request for documentation regarding the other Plan participants, citing concerns for those individuals' privacy. (Doc. No. 28-1 at 20). Benschoter claims he has been "denied access to information as to the type of bridge mechanic duties that Defendant previously determined to be outside of 'bargaining unit work.'" (Doc. No. 33 at 8).

As I noted above, the Plan incorporates a detailed statement of the type of activity that is considered to be within the Jurisdiction of the Union and thus defines the scope of prohibited work for the purpose of determining eligibility for severance benefits. At least some of the duties Benschoter submitted for review fall squarely within this scope of prohibited work. Benschoter does not contend the other Plan participants submitted the same information, and Defendant's refusal to share those participants' files did not prohibit Benschoter from simply asking those individuals about their severance-benefit applications or their employment status at the time they submitted those applications. Benschoter fails to show Defendant's decision, which was rendered following Defendant's review of the information and documents Benschoter submitted, was arbitrary and capricious.

### IV.    CONCLUSION

For the reasons stated above, Benschoter's motion for leave to file a motion for judgment on the administrative record, (Doc. No. 34), is granted, and his motion for judgment on the administrative record, (Doc. No. 34-1), is denied. Defendant's motion for judgment, (Doc. No. 29), is granted.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

6